IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BRANDON KEITH JOHNSON, <br> TDCJ-CID No. 02335158, <br><br> Plaintiff, <br><br> v. <br><br> TEXAS TECH UNIVERSITY HEALTH <br> SCIENCE CENTER, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> §    2:24-CV-214-Z-BR <br> § <br> § <br> § <br> § <br> § <br> § |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff Brandon Keith Johnson ("Johnson") against various Defendants, alleging violations of his civil rights in connection with his medical care. Johnson filed this lawsuit *pro se* while a prisoner at the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") in Amarillo, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Johnson's Complaint be DISMISSED as frivolous under 28 U.S.C. §§ 1915 and 1915A.

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of

whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A.  Factual Background.[1]

Johnson alleges that Clements Unit officials improperly confiscated his medically prescribed sunglasses, which he used to minimize his exposure to bright lights that frequently trigger seizures. He states that his seizures are due to a traumatic brain injury he suffered in 2010.

---

[1] These background facts are taken from Plaintiff's Complaint (ECF 3) and questionnaire responses (ECF 11), and are assumed to be true for the purpose of evaluating the merits of Plaintiff's causes of action.

(ECF 3 at 4). Johnson claims that, after the sunglasses were confiscated in December 2022, he suffered seizures that resulted in falls, causing a black eye, broken teeth, lacerations, memory problems and mental anguish. (*Id.*; ECF 3-2 at 54). He states that the seizures often occur when unnamed guards shine a flashlight into his cell. (ECF 11 at 13). He claims that Defendants Logan Shedd ("Shedd"), John D. Hierholzer ("Hierholzer"), Paul Burch ("Burch"), Mousumi Dey ("Dey"), Melanie A. Pierce ("Pierce") and Texas Tech University Health Services Center ("TTUHSC") violated his Eighth Amendment right to medical care by failing to return the confiscated sunglasses and failing to treat his persistent scabies infection.

**B.      Claims Against Medical Providers.**

The Constitution requires that prison officials provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that, because "only the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation omitted) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only when he (1) knows the inmate faces "a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847

(1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs.

*Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

The Court examines Johnson's claims against each Defendant as they relate to specifically identified events; however, the Court notes at the outset that Johnson's medical records show he was afforded extensive medical care by prison officials during the relevant period. *Norton*, 122 F.3d at 292; *see Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). The records establish that medical personnel regularly saw Johnson regarding his various medical complaints. For this reason alone, Johnson's claims of deliberate indifference are subject to dismissal. *See, e.g., Montes v. McAdam*, No. 5:14-CV-005-C, 2014 WL 5454843, at *3 (N.D. Tex. Oct. 27, 2014) ("The type and frequency of medical care shown in the authenticated medical records ... show that physicians have been responsive to [plaintiff's] complaints and have addressed them with medication and other forms of treatment and accommodation."); *Chavez v. Univ. Med. Ctr.*, No. 5:06-CV-157-BG, 2006 WL 8448187, at *2-3 (N.D. Tex. Dec. 22, 2006) (concluding that authenticated medical records "rebut [plaintiff's] claim of deliberate indifference" because they showed "that medical personnel provided him with ongoing and consistent medical care"); *Banuelos*, 41 F.3d at 234 (acknowledging that dismissals may be based on adequately identified or authenticated records). Nevertheless, the Court evaluates each claim in turn.

    **1.    Claims Against Burch.**

Johnson alleges claims against Burch based on Burch's purported failures to treat Johnson's scabies infection and frequent seizures. Johnson states that, on December 28, 2023, he was given a blanket infected with scabies, which then led to him becoming infected as well. (ECF 11 at 5, 12-13). Johnson alleges that, after a biopsy in March and April of 2024, Burch changed

Johnson's records to falsely reflect a diagnosis of psoriasis rather than scabies. (*Id.*). Johnson contends that the pathology report shows that he had scabies rather than psoriasis. He states that Burch's deliberate indifference and misdiagnosis caused the problem to persist unnecessarily for more than six months. (*Id.*).

Regarding Johnson's scabies, Johnson has not alleged facts showing that Burch was deliberately indifferent to Johnson's serious medical needs. Specifically, he has not alleged facts showing that Burch deliberately failed to treat his scabies, nor has he alleged facts showing that Burch was actually aware of a substantial risk of serious harm by diagnosing Johnson with psoriasis rather than scabies, yet did so despite such risk. *See Lawson*, 286 F.3d at 262.

Further, the records provided by Johnson show that Burch attempted to treat Johnson's skin condition by providing him a steroid cream and moisturizer, as well as instructions on how both were to be used. (ECF 3-2 at 23). At best, a liberal construction of Johnson's allegations might state claims for negligence for misdiagnosing Johnson's skin condition, which fails to implicate the constitution. In fact, Johnson acknowledges in his questionnaire responses that Burch's conduct could be caused by negligence, in that he alleges that Burch "simply overlook'd" that the condition was caused by scabies rather than psoriasis. (ECF 11 at 5). *See Gobert*, 463 F.3d at 346; *Casher v. Melton*, No. 1:14-CV-120-C, 2015 WL 3541476, at *4 (N.D. Tex. June 2, 2015) ("Negligence or medical malpractice does not amount to a constitutional violation."). While the length of time spent in attempting to resolve the skin problem was no doubt frustrating, it is not a constitutional violation.

Similarly, Johnson fails to state a claim against Burch for failing to address his seizures and ignoring his request for an evaluation by a free-world doctor. (ECF 11 at 12-13). Johnson provided more than 200 pages of documents evidencing his requests for medical care, grievances

regarding medical care, and responses by medical and Clements Unit personnel. (ECF 3-1 to 3-4). Such documents show that Johnson was, in fact, referred for a CT scan of his head and an appointment with an outside provider for his seizures (ECF 3-2 at 11) and was referred for an EEG by neurology (*Id.* at 15). The records provided by Johnson, as augmented by the authenticated records in this case, clearly show that Johnson's seizure problems were addressed by Defendants, although perhaps not as frequently or quickly as Johnson desired, or in the way he desired. *See Martikean v. United States*, No. 3:11-CV-1774-M-BH, 2012 WL 1986919, at *5 (N.D. Tex. Apr. 6, 2012) ("A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment."), *adopted by* 2012 WL 1992111 (N.D. Tex. June 4, 2012). Johnson has failed to state a constitutional violation by Burch. Accordingly, his claims against Burch should be dismissed.

### 2. Claims Against Dey.

Johnson first alleges that Dey accused him of both using his seizure medication to get high, and faking his medical condition. (ECF 11 at 6). He also states that Dey refused to provide help with his seizures. (*Id.* at 14). The Fifth Circuit has long recognized that verbal threats or harassment made by an officer do not constitute a basis for a Section 1983 claim. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983)); *see also Rader v. Lubbock Cty.*, No. Civ. A. 5:01-CV-258-C, 2003 WL 21145788, at *13 (N.D. Tex. Apr. 25, 2003) (quoting *Robertson*, 70 F.3d at 24) (dismissing prisoner's claim that defendant verbally taunted and threatened him because "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations"); *Watson v. Winborn*, No. 02-10984, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (per curiam) ("Verbal

7

threats, name calling, and threatening gestures by [institution officials] do not amount to a constitutional violation."); *Prescott v. Johnson*, No. 18CV577, 2022 WL 672694, at *14 (E.D. Tex. Mar. 7, 2022) (dismissing Section 1983 claim "regarding verbal threats, name calling, and harassment" for failure to state a claim). Accordingly, Johnson fails to state a claim based on Dey's alleged verbal abuse, and such claim should be dismissed.

Regarding his claims that Dey refused to treat his seizure disorder, such claims fail for the reasons set forth above. (ECF 11 at 17). Johnson's records show that he was referred to various specialists, and was treated for seizures, although not with sunglasses at first. (ECF 3-3 at 13). Eventually, he did receive another pass for sunglasses from Dey. (ECF 3-2 at 53). Johnson has not alleged facts showing that Dey deliberately failed to treat his seizures, nor has he alleged facts showing that Dey was actually aware of a substantial risk of serious harm by treating his seizures in ways other than providing sunglasses, yet did so despite such risk. *See Lawson*, 286 F.3d at 262. Johnson's claims against Dey should be dismissed.

### 3. Claims Against Pierce.

Johnson alleges that Pierce refused to provide him sunglasses, telling him that a non-defendant supervisor refused to allow them at the Clements Unit. Johnson states he was seen multiple times by Pierce regarding his seizures and scabies, and she told him in "repeated conversations" that she could only act under the direction of her supervisor. (ECF 11 at 8, 14-15). Again, Johnson fails to allege deliberate indifference by Pierce. He admits—and his exhibits show--that she treated him for his seizures and scabies; the fact that she did not initially provide him sunglasses, if true, amounts solely to dissatisfaction with the medical treatment he received, rather than an outright refusal to provide treatment by Pierce. *See Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam) ("[Prisoner's] dissatisfaction with the treatment he received is

insufficient to state a constitutional claim."); *McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. Oct. 29, 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Johnson v. United States*, No. 3:18cv176-TSL-RHW, 2020 WL 4496752, at *4 (S.D. Miss. June 29, 2020) ("A prisoner's dissatisfaction or disagreement with medical treatment does not establish a constitutional violation."), *adopted by* 2020 WL 4493137 (S.D. Miss. Aug. 4, 2020); *Garrett v. Sulser*, No. 6:17cv310, 2019 WL 8500862, at *7 (E.D. Tex. Nov. 4, 2019) (concluding that complaints alleging medical personnel "merely performed a 'cursory' examination" were nothing more than "disagreement and/or dissatisfaction with the medical treatment he received"), *adopted by* 2020 WL 562804 (E.D. Tex. Feb. 5, 2020); *Shipley v. Statton*, No. 1:08-CV-133-C, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] ... does not demonstrate that he was denied treatment.").

In sum, Johnson cannot show deliberate indifference because "it is clear that he was seen when he requested treatment and that the [medical personnel] who saw him attempted to provide several remedies" for his condition. *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009) (per curiam); *see Wiggins v. Zein*, 108 F. App'x 148, 149 (5th Cir. 2004) (per curiam) (finding no constitutional violation where inmate "received treatment for his knee injury, including pain medication, x-rays, ice packs, Ace bandages, and crutches"). Johnson admits that he was treated; he simply disagrees with the type of treatment he received. *See Mercer v. United States*, 508 F. App'x 324, 325 (5th Cir. 2013) (per curiam) (noting that an inmate's disagreement with a "doctor's choice of treatment ... does not support a constitutional violation"). As a matter of law, this does not constitute deliberate indifference. Johnson's claims against Pierce should be dismissed.

### C.   Claims Against Defendants Shedd and Hierholzer.

Johnson alleges that both Shedd (the Clements unit health administrator) and Hierholzer (the TTUHSC medical director) ignored written requests for help sent to them by Johnson, as well as failed to properly supervise and "correct" the medical providers whom they supervise. (ECF 11 at 1-5; ECF 11 at 9-10). Neither allegation, taken as true, states a viable constitutional violation.

The mere fact that Johnson attempted to contact Shedd and Hierholzer in writing does not mean that either Defendant is personally involved in the alleged violation of Johnson's constitutional rights. "[T]housands of grievances, letters, and complaints are written by inmates each month. The directors and administrators of the prison are not liable for each and every incident raised in each and every one of those grievances or letters on the basis that they have 'personal knowledge' of the claims contained therein." *Robinson v. Stephens*, No. 6:14cv701, 2017 WL 4112363 (E.D. Tex. Aug. 9, 2017); *see also Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (given the size of the operation that they oversee, the Director of TDCJ, the Senior Warden of the plaintiff's prison unit and the Director of the Classification Division "cannot be expected to intervene personally in response to every inmate letter they receive."). Johnson's attempts to contact Shedd and Hierholzer, without more, are insufficient as a matter of law to confer personal liability on Shedd and Hierholzer, and they are not liable solely in their capacity as supervisors of the other Defendants. The doctrine of *respondeat superior* does not apply in Section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990).

Supervisory officials are not liable for the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d

924, 929 (5th Cir. 1992) (*citing Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under Section 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Id*. at 304 (quotations omitted).

In order to establish a claim for a deficient policy that caused the violation of a constitutional right under Section 1983, a plaintiff must identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of his constitutional rights. *Monell v. Dep't of Soc. Serv.*, 435 U.S. 658, 694-95 (1978). Johnson has not alleged facts that satisfy this standard. Johnson complains only that Hierholzer did not enforce compliance with relevant policies, not that a policy created by Hierholzer was the cause of the alleged violation of his constitutional rights. (ECF 11 at 4). Johnson has failed to establish that either Shedd or Hierholzer is liable in his supervisory role for a constitutionally deficient policy that created a violation of Johnson's constitutional rights.

Johnson alleges that Hierholzer eventually ordered x-rays and antibiotics but claims that Hierholzer was deliberately indifferent because it took two months for the x-rays to be taken, and he did not receive the prescribed antibiotics. (ECF 11 at 11). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (alterations in original) (quoting *Mendoza*, 989 F.2d at 195). Assuming that the delay in requesting x-rays and

11

providing antibiotics resulted in substantial harm, Johnson nevertheless has not shown that the delay was due to the deliberate indifference by Hierholzer. Johnson does not allege that Hierholzer refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard for his serious medical needs. As such, he has not shown that Hierholzer was deliberately indifferent to Johnson's medical needs such that Johnson has stated an Eighth Amendment claim based upon Hierholzer's personal involvement. *See Johnson*, 759 F.2d at 1238. Accordingly, for the reasons stated above, Johnson's claims against Shedd and Hierholzer should be dismissed as frivolous.

D.     **Claim Against TTHUSC/Wade Keeter.**

Johnson sues TTHUSC for failing to provide adequate medical care; however, as a sovereign entity, a state may not be sued without its consent. Therefore, under the Eleventh Amendment, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. Louisiana Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).

Johnson's claims against Defendant TTUHSC are without merit because they are simply another way of attempting to sue the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Eleventh Amendment "prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Daigle v. Gulf State Utilities Co., Local Union Number 2286*, 794 F.2d 974, 980 (5th Cir. 1986). When a state agency is the named defendant, the Eleventh Amendment bars all suits against it, regardless of the relief sought. *Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009). The Fifth Circuit has held that TTUHSC is a state agency that enjoys immunity from suit in federal court. *United States v. Texas Tech Univ.*, 171 F.3d 279, 289 (5th Cir.

1999) ("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions.") (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996)); *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1025 (5th Cir. 2022) ("Texas Tech University [is] an agency of Texas that enjoys sovereign immunity."). Accordingly, Johnson's claims against TTUHSC should be dismissed.

When asked in the Court's briefing order questionnaire whether he wanted to name an individual in lieu of his claims against TTUHSC, Johnson stated that Wade Keeter ("Keeter") originally took away his sunglasses, which caused the seizures. (ECF 11 at 8). However, he fails to allege facts sufficient to state a claim against Keeter. He does not allege facts indicating that Keeter was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" that confiscating the sunglasses could substantially harm Johnson. *Brewster*, 587 F.3d at 770. Johnson does not state a plausible claim that Keeter knew at the time he took the sunglasses that Johnson faced a substantial risk of serious harm from seizures or otherwise; accordingly, the claims against Keeter must be dismissed.

### III. RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Johnson's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that Johnson be issued a strike within the meaning of 28 U.S.C. § 1915(g).

### IV. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 31, 2025.

*signature*
_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).